UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| POLYGON NORTHWEST COMPANY, L.L.C., a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LOUISIANA-PACIFIC CORPORATION, a Delaware corporation.<br><br>Defendant. | NO.<br><br>COMPLAINT FOR DAMAGES AND RESTITUTION<br><br>[JURY TRIAL DEMANDED] |

Plaintiff alleges as follows:

## I. PARTIES

1.1     Plaintiff Polygon Northwest Company, LLC ("Polygon") is a Washington limited liability company with its principal place of business in King County, Washington.

1.2     Defendant Louisiana Pacific Corporation ("L-P") is a Delaware corporation that regularly conducts business and keeps a registered agent in Washington.

## II. JURISDICTION AND VENUE

2.1     Jurisdiction.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Defendant L-P is a Delaware corporation with its principal place of business in Tennessee.  L-P conducts business in Washington.  Plaintiff Polygon is a Washington limited

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 1
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

liability company. Thus, the parties are citizens of different states. The amount in controversy exceeds $75,000.

2.2   Venue.  Venue is proper pursuant to 28 U.S.C. § 1391 as the events and omissions giving rise to Plaintiff's claims occurred in this judicial District; the property subject to this action is in this judicial District; Defendant does business and is subject to personal jurisdiction in this judicial District; and the ends of justice require the claims against Defendant be litigated in this Court.

### III. FACTUAL ALLEGATIONS

**A.   The Product**

3.1   Historically, vinyl siding has only been offered in lighter shades of color due to its inability to withstand distortion and fading.

3.2   In 2001, L-P released its line of Norman Rockwell Colorguard brand vinyl siding products and accessories ("Rockwell Siding"). The Rockwell Siding featured colors darker and richer than typical siding, including "Forest," "Mahogany," and "Barn Red." According to L-P, the introduction of these darker colors was "made possible by the biggest breakthrough in vinyl technology in decades." L-P announced that its new product "stands up to the sun's UV rays so well," L-P backed it "with a 25-year fade resistance warranty."

3.3   Shortly after being introduced to the public in 2001, the Rockwell Siding suffered problems with distortion, particularly "oil canning." ("Oil canning" is a buckling or wrinkling of the panel face, so named because it resembles the bottom of an oil can.) Consequently, L-P pulled its product and "re-engineered" the Rockwell Siding with new additives. According to the company, "[t]he newly designed features provide increased rigidity and a more consistent, level installation."

3.4   In addition to fade resistance, L-P's warranty guarantees that the Rockwell Siding "will remain free from manufacturing defects that cause peeling, flaking, rusting, blistering, or rotting." The warranty, which is transferable, promises full repairs and

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 2
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

replacement for defective or damaged product, including all labor and materials needed. The warranty lasts for the original purchaser's lifetime, or, if the owner was not the original purchaser, for 50 years from purchase.

**B.  Plaintiff's Installation of the Product**

3.5     Polygon plans communities and constructs single-family and multi-family dwellings within Washington and Oregon. Beginning in early 2004, Polygon purchased and started using the Rockwell Siding on some of its single- and multi-family homes in Washington. Polygon had viewed some of L-P's marketing materials and considered the darker colors of the Rockwell Siding to be a marketing advantage over the lighter colored vinyl siding that had been used in past projects. Polygon relied on L-P's assertion that Rockwell Siding could withstand the harmful effects of the sun and maintain its integrity for decades.

3.6     By summer 2005, Polygon had built over 500 homes clad with Rockwell Siding, the vast majority of which are multi-family units. Polygon installed the following Rockwell Siding colors on its units: Canvas, Mahogany, Forest, Graphite, Suede, and Dusk.

3.7     Polygon provided a general four-year warranty to purchasers of its multi-family homes, and a six-year warranty to purchasers of its single-family homes. Among other things, these warranties cover defects in Rockwell Siding.

**C.  The Uniform Failure of the Product**

3.8     After the Rockwell Siding was installed, Polygon discovered problems with distortion, deformation, and fading/chalking of the Rockwell Siding. These problems multiplied, affecting dozens of buildings in different Polygon neighborhoods. Some homes have experienced three or four separate failures of the Rockwell Siding since installation. These failures led to costs for diagnosis, repair, and replacement, as well as homeowner dissatisfaction. Future failures are inevitable.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.         ) - 3
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

3.9     The Rockwell Siding, because of its composition and dark, rich color, suffers abnormally high heat absorption and surface temperatures, even during ordinary weather in the region, which leads to deformation, distortion, or fading/chalking, and premature failure during the term of its useful life. This warping causes the product to be ineffective for the purpose for which it was intended as well as being aesthetically unacceptable.

3.10    L-P advertised, distributed and sold the Rockwell Siding without performing adequate testing on the product's ability to withstand typical sun and heat exposure and to last its useful life under normal operating conditions. Customers expect their siding to retain its physical integrity throughout its useful life. L-P knew or should have known that its product would experience failures within the term of its warranty period, and that it was not suitable for its intended use. L-P failed to disclose this fact to Polygon or other consumers.

3.11    All Rockwell Siding suffers from the same uniform defects: the Rockwell Siding will not perform when used for its intended purposes without some deformation, distortion, or fading/chalking occurring, regardless of the product's installation or other factors. Such deformation, distortion, or fading/chalking constitutes product failure.

3.12    L-P's defective Rockwell Siding harmed the structures upon which it was installed, in that the inevitable removal of the defective siding caused damage to the affected buildings' flashings and weather resistive barrier.

3.13    During multiple discussions between Polygon and L-P, L-P denied that it had been presented with any other claims relating to the Rockwell Siding. Polygon continued to investigate this matter over the last few years as it was addressing the claims. Polygon learned that multiple other customers in different geographical areas had presented claims to L-P. L-P concealed this fact from Polygon.

**D.     Polygon's Efforts to Resolve Claims**

3.14    Shortly after Polygon began using the Rockwell Siding, it began to discover problems with deformation, distortion, or fading/chalking of the product. Polygon promptly

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 4
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

contacted L-P regarding the problems and requested L-P take care of the issues. L-P refused to do so, and claimed that there was nothing wrong with its product.

3.15   As a result of L-P's refusal to accept responsibility, Polygon became exposed to homeowner liability under its own warranty, and under statutory warranties of quality. In order to meet its obligation to L-P's and Polygon's mutual customers, it was required to investigate and research the failures and product, and to figure out appropriate solutions. To do so, Polygon was required to retain experts to analyze and investigate the product failures. In essence, Polygon was put to the task of proving to L-P that the Rockwell Siding was defective, and to bear L-P's obligations.

3.16   While Polygon was doing the analysis and investigations, it was required to repair and replace Rockwell Siding on many customers' homes.

3.17   Polygon provided L-P with the results of its investigations and continued to demand that L-P assume responsibility for its defective Rockwell Siding product. L-P sent a group of its employees (including one of its engineers, Mr. Rick Lappin) to Polygon's office in Bellevue to discuss the claims. Mr. Lappin disclosed to Polygon that he had direct experience in the testing phase of the Rockwell product's development, and that he harbored concerns with the product. Regardless, L-P continued for many months thereafter to deny all responsibility for the problem. Ultimately, L-P agreed to repay some of the costs incurred, but refused to admit liability. Polygon never agreed with the partial reimbursement paid by L-P, and continued to reserve its rights to recover the remainder of the costs incurred to compel L-P to honor its obligations.

3.18   Over the ensuing years, from around the time L-P began to honor part of its obligation, Polygon and the affected homeowners submitted dozens of warranty claims to L-P. Prior to that time, Polygon itself had repaired and replaced the siding on numerous other homes during its investigative and analysis period.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 5
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

3.19   Polygon had to submit multiple claims on behalf of certain homeowners, because of repeated failures of the Rockwell Siding. Indeed, several homeowners, after multiple claims, ultimately insisted on a different brand of siding being installed on their homes, due to a lack of confidence in L-P's product.

3.20   Polygon has incurred significant expenses — including legal fees, consulting expenses, and other out-of-pocket costs — as a direct and unavoidable result of L-P's deliberate denial of responsibility for the siding failures, and because it had no other choice than to take steps to investigate and resolve the issues caused by L-P's defective product, and to force L-P to be accountable to its warranty. Polygon would not have incurred these substantial sums but for L-P's improper representations, and for its defective product.

3.21   Because of the repeated failures of the Rockwell Siding, Polygon has lost confidence in L-P's ability to properly and permanently resolve the claims brought by Polygon's homeowners.

E.   **Tolling Agreement**

3.22   On or about March 1, 2007, Polygon and L-P entered into a tolling agreement (the "Tolling Agreement"), pursuant to which Polygon agreed not to bring any claims against L-P based on the above-described defects until September 1, 2007, in exchange for L-P's agreement to toll any applicable statutes of limitation relating to Polygon's claims until September 1, 2007.

3.23   On or about July 1, 2007, Polygon and L-P executed the First Amendment to the Tolling Agreement (the "Amended Tolling Agreement"), pursuant to which the parties agreed that all statutes of limitation related to Polygon's claims would be tolled indefinitely, and that Polygon would not bring any claims relating to the above-described defects as long as the Amended Tolling Agreement was in effect. The Amended Tolling Agreement provides that either party may terminate the agreement at any time, upon ten days written notice to the other party.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 6
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

# IV. FIRST CLAIM FOR RELIEF
### (Violation of Washington's Consumer Protection Act, RCW 19.86 *et seq.*)

4.1. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

4.2. Defendant engaged in unfair or deceptive acts or practices when it: (i) represented Rockwell Siding would last the expected lifetime even though Defendant lacked credible evidence to support those claims and, in fact, had substantial evidence to the contrary; (ii) failed to disclose its knowledge of the defects in the product, but instead continued to advertise and sell Rockwell Siding as a product that could be expected to last a lifetime; (iii) failed to disclose the defective nature of Rockwell Siding to Plaintiff; and (iv) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the true defective nature of its Rockwell Siding to Plaintiff.

4.3. Defendant either knew or should have known its Rockwell Siding was defectively designed and/or manufactured, would fail prematurely, was not suitable for its intended use, and otherwise was not as warranted and represented by Defendant.

4.4. Defendant's unfair or deceptive acts or practices repeatedly occurred in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

4.5. As a direct and proximate cause of Defendant's unfair or deceptive acts or practices, Plaintiff has suffered actual damages in that it purchased, installed, and warranted a product that is defective and that fails prematurely due to design and/or manufacturing deficiencies. These failures have caused and will continue to cause Plaintiff to incur expenses diagnosing, repairing, and/or replacing the Rockwell Siding.

4.6. As a result of Defendant's violations of the Washington Consumer Protection Act, Plaintiff is entitled to actual and compensatory damages, including purchase costs and costs that have been and will continue to be expended repairing and/or replacing the Rockwell Siding, as well as restitution, rescission, exemplary damages, attorneys' fees, interest and other

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.          ) - 7

4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

costs. Plaintiff is also entitled to injunctive relief requiring Defendant to remove and replace the Rockwell Siding with a suitable alternative product.

## V. SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty)

5.1.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

5.2.  At all times relevant herein, L-P impliedly warranted to Plaintiff that the Rockwell Siding was of merchantable quality and was safe and fit for its intended use as siding material in residential applications.

5.3.  Contrary to L-P's implied warranties, the Rockwell Siding was not of merchantable quality, as it was not fit for the ordinary purposes for which such goods are used, and/or did not conform to the promises or affirmations of fact made in Defendant's promotional literature.  The Rockwell Siding contains an inherent defect which is substantially certain to result in failure during the useful life of the product.

5.4.  At all times relevant herein, L-P impliedly warranted in a uniform manner to Plaintiff that Rockwell Siding was fit for its intended purpose.  At the times L-P marketed, sold, and/or distributed the Rockwell Siding for use by Plaintiff, L-P had actual or constructive knowledge of the particular purposes for which the Rockwell Siding was to be used.  Plaintiff relied upon the skill and judgment of L-P to select and furnish suitable goods.

5.5.  Contrary to L-P's implied warranty, the Rockwell Siding was not fit for its intended and known use by Plaintiff.  The Rockwell Siding contains inherent defects which are substantially certain to result in malfunction during the useful life of the product.

5.6.  Any contractual language contained in Defendant's published warranties that attempts to disclaim implied warranties or limit remedies is unconscionable, fails to conform to the requirements for limiting warranties on remedies under applicable law, causes the warranties to fail of their essential purpose, and is thus unconscionable and void.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.         ) - 8
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

5.7.    As a result of Defendant's misconduct, Plaintiff is entitled to actual and compensatory damages, including costs that have been and will be expended repairing and/or replacing the Rockwell Siding, as well as restitution, rescission and interest. Plaintiff is also entitled to injunctive relief requiring Defendant to remove and replace the Rockwell Siding with a suitable alternative product.

## VI. THIRD CLAIM FOR RELIEF
### (Implied Indemnity)

6.1.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

6.2.    In its marketing materials, Defendant expressly and impliedly represented that its product was free from defects for at least 50 years from purchase.

6.3.    Relying on such representations, Plaintiff provided warranties to its purchasers, which included coverage for failures with the installed Rockwell Siding.

6.4.    Plaintiff has expended costs repairing and replacing failed Rockwell Siding pursuant to its warranties to purchasers. During the pendency of this action, Plaintiff expects to continue expending costs repairing and replacing failed Rockwell Siding.

6.5.    Plaintiff's liability to its purchasers under its warranty for Rockwell Siding failures based on the product's inherent defect should be rightfully assumed by Defendant.

6.6.    Defendant is an implied indemnitor of Plaintiff for its liability to its purchasers. Plaintiff is entitled to damages for all monies it has expended, paid or is deemed liable to its purchasers relating to the defective Rockwell Siding.

## VII. FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

7.1.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.          ) - 9
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

7.2. Defendant received monies as a result of Plaintiff's purchases of Rockwell Siding, and Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff.

7.3. Defendant's enrichment at the expense of Plaintiff was unjust.

7.4. As a result of Defendant's wrongful conduct, Plaintiff is entitled to restitution from and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Defendant, plus interest thereon.

## VIII. FIFTH CLAIM FOR RELIEF
### (Actionable Misrepresentation)

8.1. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

8.2. Defendant knew or should have known its Rockwell Siding was defectively designed and/or manufactured, would fail prematurely, was not suitable for its intended use, and otherwise was not as warranted and represented.

8.3. Defendant fraudulently, negligently, or recklessly concealed from and/or failed to disclose to Plaintiff the defective nature of the Rockwell Siding.

8.4. Defendant was under a duty to Plaintiff to disclose the defective nature of its Rockwell Siding because (i) Defendant was in a superior position to know the true state of the facts about the design and/or manufacturing defect in its Rockwell Siding because the design and/or manufacturing defect is latent; (ii) Defendant made partial disclosures about the quality of Rockwell Siding without revealing its true defective nature; and/or (iii) Defendant actively concealed the defective nature of Rockwell Siding from Plaintiff.

8.5. The facts concealed and/or not disclosed by Defendant to Plaintiff are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase Defendant's Rockwell Siding. Had Plaintiff known the defective nature of Defendant's Rockwell Siding, Plaintiff would not have purchased the product.

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 10
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

8.6. Defendant intentionally, recklessly, or negligently concealed and/or failed to disclose the true nature of the design and/or manufacturing defect in its Rockwell Siding for the purpose of inducing Plaintiff to act thereon, and Plaintiff justifiably relied to its detriment upon the truth and completeness of Defendant's representations about Rockwell Siding. This is evidenced by Plaintiff's purchase of Defendant's Rockwell Siding.

8.7. Defendant continued to conceal the defective nature of its Rockwell Siding even after Plaintiff reported problems. Indeed, Defendant continues to cover up and conceal the true nature of the problems with the product.

8.8. As a direct and proximate cause of Defendant's misconduct, Plaintiff has suffered actual damages in that the Rockwell Siding that Plaintiff purchased and installed on homes for which Plaintiff has warranty obligations is defectively designed and manufactured and has failed or will fail prematurely, requiring Plaintiff to incur expenses diagnosing, repairing and/or replacing the siding and repairing related property damage.

8.9. As a result of Defendant's misconduct, Plaintiff is entitled to actual and compensatory damages, including purchase costs and costs that have been and will continue to be expended repairing and/or replacing the Rockwell Siding, as well as restitution, rescission and interest. Plaintiff is also entitled to injunctive relief requiring Defendant to remove and replace the Rockwell Siding with a suitable alternative product.

## IX. SIXTH CLAIM FOR RELIEF
### (Violation of Washington's Product Liability Act)

9.1 Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

9.2 Defendant is a "manufacturer" and "seller" of the defective Rockwell Siding within the meaning of the Washington Product Liabilty Act ("WLPA"), RCW 7.72.010(1) and (2).

9.3 The Rockwell Siding is a "product" within the meaning of the WLPA, RCW 7.72.010(3).

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.        ) - 11
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

9.4 The Rockwell Siding was not reasonably safe as designed in that it is defectively designed, fails prematurely, and is not suitable for use on consumers' homes to an extent beyond which would be contemplated by an ordinary consumer.

9.5 The Rockwell Siding was not reasonably safe as designed, because, at the time of manufacture, the likelihood that the Rockwell Siding would cause Plaintiff's and its customers' harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendant to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the Rockwell Siding.

9.6 Both at the time of manufacture and after the Rockwell Siding was distributed and/or sold, the likelihood that the Rockwell Siding would cause Plaintiff's and its customers harm or similar harms rendered Defendant's warnings and/or instructions inadequate. Defendant could have provided warnings and/or instructions that would have been adequate.

9.7 Defendant is subject to strict liability to Plaintiff under the WLPA because Plaintiff's harm was proximately caused by the fact that the Rockwell Siding was not reasonably safe in construction and/or not reasonably safe because it did not conform to Defendant's express warranty and/or to the implied warranties under Title 62A RCW.

9.8 As a result of Defendant's breach of the WLPA, Plaintiff is entitled to compensatory damages, attorneys' fees, costs, and interest thereon.

## X. RELIEF REQUESTED

Plaintiff requests the Court to enter judgment against Defendant as follows:

10.1 Award to Plaintiff compensatory, exemplary, and statutory damages, including interest thereon, in an amount to be proven at trial;

10.2 Declare that Defendant must disgorge, for the benefit of Plaintiff, all or part of the ill-gotten profits it received from the sale of its Rockwell Siding, or to make full restitution to Plaintiff;

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.         ) - 12
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

10.3   Award attorneys' fees and costs to Plaintiff, as allowed by law;

10.4   Award pre-judgment and post-judgment interest, as provided by law;

10.5   Grant leave to amend the Complaint to conform to the evidence produced at trial; and

10.6   Grant such other and further relief as may be appropriate under the circumstances.

## XI. DEMAND FOR JURY TRIAL

11.1   Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED this 11th day of April, 2011.

TOUSLEY BRAIN STEPHENS PLLC

By: _____
Christopher I. Brain, WSBA #5054
cbrain@tousley.com
Paul W. Moomaw, WSBA #32728
pmoomaw@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
T: 206.682.5600
F: 206.682.2992

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES AND RESTITUTION
(NO.         ) - 13
4275/001/201333.3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992