UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| POLYGON NORTHWEST COMPANY LLC,<br><br>    Plaintiff,<br><br> v.<br><br>LOUISIANA-PACIFIC CORPORATION,<br><br>    Defendant. | CASE NO. C11-620 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 72) and Plaintiff's motion to seal (Dkt. No. 85). Having reviewed the motions, the responses (Dkt. Nos. 83 and 90), the reply (Dkt. No. 88), and all related filings, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment and GRANTS Plaintiff's motion to seal.

**Background**

Polygon Northwest Company, LLC ("Polygon") is suing Defendant Louisiana-Pacific Corporation ("LP"), alleging LP supplied defective vinyl siding in homes built by Polygon in

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 1

1  2004. It is undisputed LP eventually replaced the defective siding in 2006; however, Polygon is
2  suing LP for (1) implied indemnity, (2) violating the Washington's Product Liability Act
3  ("WPLA"), (3) breach of implied warranty, (4) violating the Washington Consumer Protection
4  Act ("CPA"), (5) unjust enrichment, and (6) misrepresentation.
5      Polygon is a residential home developer that builds single-family and multi-family
6  dwellings in Washington and Oregon. (Dkt. No. 84-1, Landschulz Decl. at ¶ 4.) LP is a
7  manufacturer of vinyl siding, including the Rockwell siding at issue in this action. Based on its
8  marketing materials, LP's Rockwell siding offered siding darker and richer than typical siding.
9  (Dkt. No. 84-1, Landschulz Decl. at Ex. A.) Originally introduced in 2001, Rockwell siding was
10 re-engineered in 2003 to include "premium heat distortion additives" so that it could "withstand
11 the higher heat absorption common to richer, darker colors." (Dkt. No. 86-1, Moomaw Decl. at
12 Ex. B.)
13     Beginning in 2004, Polygon installed LP's Norman Rockwell vinyl siding ("Rockwell
14 siding") in over 600 of its homes. After discovering defects, however, Polygon contacted LP and
15 LP sent two of its representatives to investigate the siding, Rick Lappin ("Lappin") and Kyle
16 O'Shea. In October 2004, Lappin issued his report, which concluded there was "obvious heat
17 distortion damage" and recommended LP "work towards improving the overall quality of the
18 product." (Dkt. No. 84-1 at 21.) However, Lappin's report also stated, "I believe the siding to be
19 performing to expectations—it's the nicest group of Rockwell I've seen used to date." (Id.)
20 In November 2004, Polygon representative Chris Landschulz ("Landshulz") responded to
21 Lappin's report in a letter, and included Polygon's concerns regarding heat distortion. (Dkt. No.
22 84-1, Ex. E.) Lappin discussed Landschulz's letter in an internal email to LP representatives. In
23 the internal email, Lappin expressed concern that LP was not adequately covering its product
24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 2

1 with heat distortion modifiers. (Dkt. No. 86-1, Ex. D.) In response to Landschulz, however, Lappin merely stated LP stands behind its products and agreed to "replace any siding found defective." (Dkt. No. 86-1, Ex. F.)

Landschulz testifies that LP did not honor Lappin's promise. (Landschulz Decl. at ¶ 17.) Polygon was forced to prove LP's siding was defective and to employ its own experts to investigate the Rockwell siding. (Id. at ¶ 18.) In October 2005, Polygon met with Lappin and LP's corporate counsel, Douglas Anderson, to discuss its expert's findings. (Id. at ¶ 19.) After the meeting, Anderson sent Polygon a letter re-stating that the problems relate to installation and not any defect in the Rockwell siding. (Dkt. No. 86-1, Ex. E.)

Polygon believes LP's conduct was deceptive. Based on discovery, LP was aware that the Rockwell siding was defective. At the time, LP had received over 60 complaints regarding the Rockwell siding. (Dkt. No. 86-1, Ex. F.) In addition, Lappin and others had internally discussed problems with the Rockwell siding's heat distortion as early as April 2005. (Dkt. No. 86-1, Ex. G.) In fact, in October 2005, in an internal report about a separate claim, an LP representative observed, "deformation is consistent with materials found on the Polygon NW sites, which were found faulty due to lack of heat distortion modifiers." (Dkt. No. 86-1, Ex. H.)

LP finally agreed to pay for the cost of replacing the defective siding in March 2006. (Dkt. No. 84, Landshulz Decl. at ¶ 22.) However, LP declined to reimburse Polygon for the attorneys' fees and expert consulting fees. (Id. at ¶ 23.)

**Discussion**

A. <u>Motion for Summary Judgment</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

1. Implied Indemnity

Polygon's implied indemnity claim is based on the fact Polygon was required by statute to warranty the homes it built. Since Polygon's warranty covered any problems with the siding, Polygon alleges it was rendered liable for LP's defect. Defendant seeks dismissal on Polygon's claim for implied indemnity because, as Polygon concedes, no homeowner or other third-party has sued Polygon for damages related to LP's defective siding. The Court GRANTS summary judgment as to this claim. However, because it would be speculative to guess whether a third-party claim may arise in the future, the Court DISMISSES this claim WITHOUT PREJUDICE.

2. WPLA

Defendant argues the recovery Polygon seeks (i.e., attorneys fees and consultant costs) is not available under the WPLA. The Court agrees.

1       Under the WPLA, a plaintiff may recover for "harm" caused by defective products, but

2 cannot recover for economic losses. RCW 7.72.030; RCW 7.72.010(6); see also Touchet Valley

3 Grain Growers, Inc. v. Oops & Seibold Gen. Constr., Inc., 119 Wn.2d 334, 351 (1992)("The

4 WPLA confines recovery to physical harm of persons and property and leaves economic loss,

5 standing alone, to the Uniform Commercial Code.") In Washington, two tests are used to

6 determine whether a plaintiff's claimed harm is economic—the sudden and dangerous test and

7 the evaluative approach. Id. The former does not apply; however, the parties dispute whether

8 the claim is recoverable under the latter.

9       The rationale underlying the evaluative approach is that a product user should not have to

10 suffer a calamitous event before earning his remedy in tort." Washington Water Power Co. v.

11 Graybar Elec. Co., 112 Wash.2d 847, 866-67 (1989). Under this approach, the court determines

12 "whether the safety-insurance policy of tort law or the expectation-bargain protection policy of

13 contract law is most applicable to the claim in question." Touchet, 119 Wn. at 353. Specifically,

14 courts consider (1) the nature of the defect, (2) the type of risk, and (3) the manner in which the

15 injury arose. Id. at 351-52.

16       Here, Polygon's claim is economic in nature and not recoverable under the WPLA. First,

17 the nature of the defect is that the siding suffered from distortion, deformation, and fading. In

18 short, the siding failed to perform as expected, but it was not a safety hazard. The nature of the

19 defect implicates the expectation-bargain policies of contract law, not tort law. See Nobl Park,

20 L.L.C. of Vancouver v. Shell Oil Co., 122 Wash.App. 838, 849 (2004)(considering whether the

21 product merely failed to meet the purchaser's expectation or "whether it suddenly leaked,

22 exploded, or came apart, such as in a violent collision"). Second, the type of risk posed by the

23 defect does not implicate tort policy. While risk to persons are considered significant risks and

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 5

1  implicate tort law, risks to other property is not determinative. Staton Hills Winery Co., Ltd. v.
2  Collons, 96 Wash.App. 590, 598 (1999). At most, removal and replacement of the defective
3  siding caused damage to other property and the warping of the siding was foreseeable and the
4  magnitude of the risk minimal. Third, the manner of the injury does not warrant a WPLA claim.
5  While the defect was apparent soon after installation, it was not a result of a sudden and
6  calamitous event. Id. at 599. Under the evaluative approach, Polygon's claim arises under
7  contract law and not the WPLA.

8      Finally, as an ancillary matter, Polygon's claim fails because any harm recoverable under
9  the WPLA was already paid by LP. As Polygon concedes, LP agreed to pay for the cost to repair
10 and replace the defective siding. Polygon's claim now is merely for the expenses incurred in
11 hiring attorneys and consultants to evaluate the defective siding. Since the claim is not for
12 physical harm of persons and property but instead for Polygon's economic losses, the Court
13 GRANTS summary judgment with respect to Polygon's WPLA claim.

14    3. Breach of Implied Warranty

15     LP seeks summary judgment on Polygon's breach of implied warranty claim because
16 LP's warranty disclaimed all implied warranties. Polygon responds (1) LP's attempt to exclude
17 all other warranties was unconscionable, and (2) the exclusionary clause failed in its essential
18 purpose. Polygon's second argument has merit.

19     a. Conscionability

20     Liability limitations are not enforceable if they are unconscionable. Puget Sound
21 Financial, L.L.C. v. Unisearch, Inc., 146 Wash.2d 428, 438 (2002). Courts use two different
22 tests to determine whether a warranty disclaimer applies in a commercial transaction: (1) the
23 Berg test or (2) a totality of the circumstances approach, or. See Berg v. Stromme, 79 Wash.2d
24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 6

1  184 (1971).  Under the stricter Berg test, warranty disclaimers must be both explicitly negotiated

2  and set forth with particularity.  Id.  Under the "totality of the circumstances approach,"

3  however, the presumption is that the limitation is prima facie conscionable unless the party

4  seeking to invalidate the liability limitation shows otherwise.  Schroeder v. Fageol Motors, Inc.,

5  86 Wash.2d 256, 262 (1975).  The totality of the circumstances approach applies when there is

6  no evidence of unfair surprise in the business dealing, while the Berg test applies when there is

7  unfair surprise.  American Nursery Products, Inc. v. Indian Wells Orchards, 115 Wash.2d 217,

8  224 (1990).  No unfair surprise exists when negotiations are "between competent persons dealing

9  at arm's length, with no claim of an adhesion contract, when the contract contains a specific

10 disclaimer and when the contract language is clear."  Id.

11       Here, the LP warranty was conscionable.  First, the totality of the circumstances test

12 applies because there was no unfair surprise.  There was no great disparity in the parties'

13 bargaining power, Polygon and LP operated at arm's length, and the warranty language is in all

14 capital letters and conspicuous.  Second, in applying the totality approach, courts consider the

15 presence or absence of negotiation regarding the clause; the custom and usage of the trade; any

16 policy developed between the parties during the court of dealing; and the conspicuousness of the

17 clause in the agreement.  Puget Sound, 146 Wash.2d at 438.  In this case, LP's warranty was that

18 the Rockwell siding "will remain free from manufacturing defects that cause peeling, flaking,

19 rusting, blistering, or rotting."  (Dkt. No. 84-1 at 11, Landschulz Decl., Ex. B.)  This is in

20 keeping with warranties by other siding manufacturers.  (Dkt. No. 89-1, Gheen Decl., Ex. A.)  In

21 capital letters, the warranty excluded all other express and implied warranties, "including any

22 implied warranty of merchantability or fitness for a particular purpose."  (Id. at 13.).  While it

23 appears the LP warranty was provided after Polygon made its purchase, suggesting some

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 7

procedural unconscionability, Polygon bears the burden of showing the warranty is not conscionable under the totality of the circumstances test. Since the mere timing of the LP warranty is not enough and Polygon fails to point to any policy or custom and usage of the trade that would suggest the warranty is unconscionable, the Court finds LP's warranty is conscionable.

      b. <u>Essential Purpose</u>

Polygon's second argument is that the limitation of remedies is invalid because it fails of its essential purpose. The Court finds this argument has merit. Under the Uniform Commercial Code, a limitation of remedy clause is ineffectual when it deprives a party of the substantive value of its bargain. Wash.Rev. Code § 62A.2-719. Limited remedies clauses fail of their essential purpose in two situations, one of which is "when the seller or other party required to provide the remedy, by its action or inaction, causes the remedy to fail." <u>Marr Enterprises, Inc. v. Lewis Refrigeration Co.</u>, 556 F.2d 951, 955 (9th Cir. 1977). Typically, cases in this category are those in which the plaintiff's remedy was limited solely to repair or replacement of defective parts and the seller failed to replace or repair in a reasonably prompt and non-negligent manner. <u>Id.</u>

Here, the LP warranty limited the consumer's available remedies to "either repair or replace[ment of the] defective or damaged Product(s) including all labor and materials necessary to perform the work." (Dkt. No. 84-1 at 11, Landschultz Decl., Ex. B.) However, the remedy under the LP warranty failed in its essential purpose. LP did not repair the defective Rockwell siding until March 2006 over a year after Polygon first notified Polygon about the distortions. Based on the record, LP appears to have stalled in fulfilling its own warranty despite being aware of the defect.

Since Polygon's sole remedy under the warranty was rendered ineffectual by LP's own actions, LP's warranty may be invalid. The Court DENIES LP's motion for summary judgment based on breach of the implied warranty.

4. CPA

Defendant argues Polygon's CPA claim fails because there was no unfair or deceptive act or an injury to its business or property. The Court disagrees.

To recover under the CPA, a plaintiff must establish (1) an unfair or deceptive act or practice, that (2) occurred in trade or commernce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was causally related to the injury. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785-93 (1986). Not every breach of contract or instance of negligence rises to the level of an unfair or deceptive act. See Blake v. Federal Way Cycle Center, 40 Wn.App. 302, 311-12 (1985). An unfair or deceptive act is one that "has a capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wn.2d at 785-86. An "injury" must be an injury to the claimant's business or property; however, the injury "need not be great." Sign-o-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash.App. 553, 563-64 (1992).

Here, there is no question Polygon established an injury to its business or property. Polygon retained attorneys and experts to investigate the Rockwell siding defects. As a result, Polygon spent money and time away from its core business—i.e., building and selling homes. In addition, Polygon lost goodwill when its customers suffered from repeated siding failures on their home. See Nordstrom, Inc. v. Tampoulos, 107 Wash.2d 735 (1987)(recognizing an injury may be based on loss of business reputation and loss of goodwill.) To the extent LP argues there was no injury because Polygon voluntarily assumed the burden of submitting warranties itself,

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 9

LP's argument is unavailing. While Polygon might not have incurred any cost if it had let homeowners submit their defective siding claims to LP directly, Polygon was also subject to liability because Polygon included a warranty with its homes. LP's argument, on the other hand, would be bad policy—if homebuilders were not required to warranty its homes, homebuilders would use cheaper and lower quality materials and merely refer homeowners to the manufacturers for any defects. LP's argument that Polygon suffered no injury, therefore, is facetious.

The closer call is whether LP's conduct in failing to disclose known defects in the siding is an unfair or deceptive act under the CPA. Under the CPA, a seller may be liable when it fails to disclose a material fact, even if the circumstances do not establish fraudulent concealment. Carlile v. Harbour Homes, Inc., 147 Wash. App. 193, 212 (2008). However, the general duty to disclose material facts arises only when the facts are known to the seller but not easily discoverable by the buyer. Griffith v. Centex Real Estate Corp., 93 Wash.App. 202, 215 (1998). Here, the Rockwell siding was not "plainly" defective and there is currently no evidence LP knew the Rockwell siding was defective when it was marketed or sold. The mere existence of other customers having filed warranty claims does not suggest LP knew the Rockwell siding was defective. However, on June 14, 2012, the Court granted Polygon's motion to compel post-closing warranty liabilities between LP and third-party KP Building Products and LP's meeting minutes regarding the vinyl siding business. Polygon may not have a CPA claim based on today's record; however, a CPA claim may exist once LP complies with the Court's order to compel. Since the documents to be produced may show LP was aware of the Rockwell siding defects, dismissal of Polygon's CPA claim is premature.

1     The Court DENIES LP's summary judgment motion because there is a factual dispute as

2  to whether LP's conduct was deceptive and whether it caused injury to Polygon's business.

3     5.  Unjust Enrichment

4     In Washington, a plaintiff who is a party to a "valid express contract is bound by the

5  provisions of that contract" and may not bring a claim for unjust enrichment for issues arising

6  under the contract's subject matter. Chandler v. Wash. Toll Bridge Auth., 17 Wash.2d 591, 604

7  (1943); see also United States ex. Rel. Walton Tech., Inc. v. Weststar En'g, Inc., 290 F.3d 1199,

8  1204 (9th Cir. 2002)(applying Chandler).  Here, Polygon is a party to a contractual relationship.

9  In fact, Polygon is suing on that contract based on LP's failure to abide by its written warranty.

10  Since a contractual relationship exists, Polygon's claim for unjust enrichment fails.  The Court

11  GRANTS LP's motion for summary judgment and DISMISS Polygon's unjust enrichment claim.

12     6.  Misrepresentation

13     LP argues the independent duty doctrine bars Polygon's misrepresentation claim.

14  Under the independent duty doctrine, plaintiffs are prohibited from recovering in tort losses to

15  which their entitlement flows only from contract.  Eastwood v. Horse Harbor Foundation, Inc.,

16  170 Wash.2d 380, 394 (2010). However, the doctrine does not bar recovery in tort when the

17  defendant's alleged misconduct implicates a tort duty that arises independently of the terms of

18  the contract.  Elcon Const., Inc. v. Eastern Washington University, 273 P.3d 965, 969 (Wash.

19  2012).

20     Here, LP argues the independent duty doctrine precludes Polygon's fraud claim.  LP's

21  argument unavailing.  First, the Washington Supreme Court's 2012 decision in Elcon

22  undermines the appellate court case LP relies on for its argument, Carlile v. Harbour Homes,

23  Inc., 147 Wash.App. 193 (2008).  In Elcon, the Supreme Court specifically held the independent

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 11

duty doctrine did not apply to preclude the plaintiff's fraud claim. Elcon, 273 P.3d at 970. Thus, the appellate court's cursory reasoning in Carlisle to find otherwise is unpersuasive. Second, LP's reliance on Justice Chambers's concurring opinion in Eastwood, likewise fails. While Justice Chambers suggested the independent duty doctrine may apply to product liability cases and real property cases, the Court in Elcon emphasized that the doctrine is applied to a "narrow class of cases" and "even in the real property context…[the courts] have repeatedly recognized a fraud claim to be outside the doctrine's scope." 273 P.3d at 969; see, e.g., Alejandre v. Bull, 159 Wash.2d 674 (2007)(finding a claim for fraudulent concealment is not barred by the economic loss rule, which was the precursor to the independent duty doctrine). Therefore, while this action relates to product liability, Elcon suggests the independent duty doctrine's scope does not extend to fraud claims.

Finally, to the extent LP alternatively argues Polygon has no fraud claim, LP's argument still fails because the factual record is not complete. A fraud claim requires Polygon show: (1) representation of an existing fact, (2) materiality, (3) falsity; (4) the speakers knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, and (9) damages suffered by the plaintiff. While the Court agrees with LP that Polygon has not shown LP knew the Rockwell siding was defective, Polygon needs time to complete the record. As discussed above, the Court just granted Polygon's motion to compel. Depending on the results of that order, Polygon may be able to meet its burden.

The Court DENIES LP's motion for summary judgment because further discovery regarding LP's knowledge of the defect is pending after the Court's order to compel.

\\

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 12

**Conclusion**

The Court GRANTS in part and DENIES in part LP's motion for summary judgment.

Specifically, the Court (1) GRANTS summary judgment and DISMISSES the implied indemnity claim WITHOUT PREJUDICE because Polygon concedes the claim is not yet ripe, (2) GRANTS summary judgment on the WPLA claim because economic loss is not recoverable under the WPLA, (3) DENIES summary judgment on the breach of implied warranty claim because LP rendered Polygon's sole remedy under the warranty ineffectual, (4) DENIES summary judgment on the CPA claim because there may be evidence LP knew of the Rockwell siding was defective based on the Court's recent order to compel, (5) GRANTS summary judgment on the unjust enrichment claim because the existence of a contractual relationship precludes the claim, and (6) DENIES summary judgment on the misrepresentation claim because further discovery is pending based on the order to compel.

In addition, Polygon filed a motion to seal Exhibits D, F, G and H, which are attached to Polygon's response to summary judgment. These are LP documents that Polygon filed under the parties' stipulated protective order. Since LP responds that it no longer seeks to seal certain exhibits, the Court GRANTS the motion in part and SEALS Exhibits D, F, and H, which contain internal communications with LP's lawyers as well as personal information regarding certain individuals who made warranty claims to LP unrelated to Polygon Homes. The Court ORDERS LP to submit redacted versions of Exhibits F and H within ten (10) days of entry of the Order. The clerk is ordered to provide copies of this order to all counsel.

Dated this <u>27th</u> day of June, 2012.

Marsha J. Pechman
United States District Judge
ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 13